UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,                 :

            - against -                   :

KENNETH THOMAS,                           :          06 Cr. 835 (DC)

                Defendant.                :

- - - - - - - - - - - - - - - - - -x

```
┌──────────────────────────────┐
│ USDC SDNY                     │
│ DOCUMENT                      │
│ ELECTRONICALLY FILED          │
│ DOC #:                        │
│ DATE FILED:  6 26 07          │
└──────────────────────────────┘
```

OPINION

**APPEARANCES:**    MICHAEL J. GARCIA, ESQ.
                    United States Attorney for the
                    Southern District of New York
                        By:  Arianna Berg, Esq.
                             Adam Hickey, Esq.
                    One Saint Andrew's Plaza
                    New York, NY  10007

                    DONALD YANELLA, ESQ.
                    Attorneys for Defendant
                    7 Dey Street, Suite 803
                    New York, NY  10007

**CHIN, D.J.**

            On December 23, 2006, defendant Kenneth Thomas, a
citizen of the United Kingdom, was flying from London to New
Zealand to meet his common law wife for the holidays.  His plane
landed at Los Angeles International Airport ("LAX") for what was
scheduled to be a three-hour layover.  Instead, United States
authorities arrested him on an indictment that had been filed in
this District three months earlier, charging him with illegally
entering, attempting to enter, or being found in the United
States, after having previously been deported from the country,
in violation of 8 U.S.C. § 1326.  He has been held in custody
since his arrest.

Thomas moves to dismiss the indictment, arguing that the charges are barred by the applicable statute of limitations because he re-entered the United States more than five years before the indictment was filed and because he has not been present in the United States since 1999.  The Government acknowledges that the statute of limitations has expired on the charge of illegal reentry, but argues that the statute of limitations has not run on the charge that Thomas was "found in" the United States because federal authorities did not learn until May 2006 that Thomas had been arrested in New York state court in October 1999 for criminal trespass.  The Government acknowledges, however, that it is not aware of any evidence of Thomas's presence in the country from 1999 until he was arrested at LAX in December 2006.  Indeed, it appears that Thomas was not in the country when he was indicted in September 2006 for, <u>inter alia</u>, being "found in" the United States.

The issue presented is whether a defendant can be "found in" the United States for purposes of 8 U.S.C. § 1326 when he is no longer in the country and the Government is unaware of his whereabouts.  I conclude that he cannot, and that Thomas could not have been "found in" the United States when he was indicted because he was not physically present in the country at that time and the Government was unaware of his whereabouts.  Accordingly, it would appear that the indictment is legally insufficient.

- 2 -

**BACKGROUND**

**A.   The Facts**

Thomas, a citizen of the United Kingdom, first entered the United States on September 11, 1990, without a visa, pursuant to the Visa Waiver Pilot Program (the "VWPP").  (Def. Mem. of Law 2).  Under this program, entrants to the United States were authorized to remain in the United States for a period not to exceed ninety days.  (Def. Notice of Mot. Ex. C).  Under the VWPP, an entrant waived his right to review of a deportability finding made by the Immigration and Naturalization Service ("INS"), although any application for asylum filed with INS would be decided by an immigration judge.  (Def. Not. of Mot. Ex. B).

Thomas overstayed his 1990 entrance under the VWPP. (Def. Not. of Mot. Ex. C).  He was arrested by the New York Police Department (the "NYPD") on January 6, 1992, and charged with third degree criminal possession and sale of a controlled substance.  (Hickey Aff. Ex. A).  Thomas pled guilty, and was sentenced to a term of one to three years' imprisonment. (Harrison Aff. Ex. A).

On April 26, 1993, while Thomas was incarcerated for the offenses in New York, INS issued Thomas an order to show cause and notice of hearing regarding deportation.  (Def. Notice of Mot. Ex. C).  A hearing was held on December 13, 1993, but subsequently INS determined that because Thomas had entered pursuant to the VWPP, he had waived any right to contest deportability (other than by applying for asylum), and

consequently he was not entitled to a hearing.  (Def. Notice of
Mot. Exs. G, H).  A warrant for deportation was issued by INS on
February 16, 1994 (Hickey Aff. Ex. B), and thereafter Thomas was
deported from the United States.  (Def. Mem. of Law 2).

Sometime prior to October 17, 1999, Thomas reentered
the United States.  On that date, he was arrested by the NYPD for
criminal trespass in the third degree.  (Hickey Aff. Ex. C).  He
was arraigned, and pled guilty the following day.  (Harrison Aff.
Ex. C).  He subsequently failed to appear or pay the required
surcharge fee, and a bench warrant was issued for his arrest on
December 20, 1999.  (Harrison Aff. ¶ 6 & Ex. A).  At some point
after October 17, 1999, Thomas voluntarily departed the United
States.

The record contains no evidence to suggest that Thomas
was present in the United States from December 1999 until his
arrest at LAX in December 2006.  (<u>See</u> 6/15/07 Tr. 8 (Government
acknowledging it had no evidence that Thomas was in the United
States between December 1999 and December 2006)).  Thomas
contends that he was not present in this country during that time
period.  (Def. Mem. of Law 2).[1]

_____

[1]     On the other hand, Thomas also initially asserted that
he was not present in the United States in 1999, contending that
he was never arrested by New York authorities in 1999.  The
Government presented documentary evidence to show that the
assertion was false, as fingerprints and an arrest photo
establish conclusively that Thomas was arrested by the NYPD in
October 1999.  (Harrison Aff. ¶¶ 5, 6, 7 & Exs. B, C, D; Hickey
Aff. Exs. A, C, D, E).

On May 25, 2006, Immigration and Customs Enforcement ("ICE"), the successor agency to INS, first became aware of Thomas's 1999 arrest following his 1994 deportation.  (Harrison Aff. ¶ 12; 6/15/07 Tr. 9-10).  On September 19, 2006, the Government filed an indictment in this Court, charging Thomas with violating 8 U.S.C. §§ 1326(a) and (b)(2), in that "[f]rom at least October 1999, up to and including the date of" the indictment, Thomas "did enter, and was found in the United States, after having been deported" therefrom.  (Indict.).  An arrest warrant was issued the same day.

On December 23, 2006, Thomas arrived at LAX in transit between London and New Zealand.  (5/17/07 Yanella Ltr. Ex. B). His travel documents show that he was scheduled for a three-hour layover before departing from LAX to New Zealand.  (Id.). International travelers who are present in a United States airport for such a layover still must present paperwork to a Customs inspector.  (6/15/07 Tr. 12).  When Thomas did so at LAX on December 23rd, he was arrested.  (Hickey Aff. ¶ 5 & Ex. D).[2]

B.  **Prior Proceedings**

Thomas first appeared in this Court on January 11, 2007, and was assigned counsel.  He requested and was granted new

---

[2]     The Government does not contend that Thomas's layover at LAX on December 23, 2006 and his subsequent arrest constitute a violation of any prong of § 1326; in other words, the Government does not contend that Thomas entered or attempted to enter or was "found in" the United States by virtue of his presence at LAX for the layover or his subsequent arrest.  (See 6/15/07 Tr. 10-11).  Indeed, the indictment was filed in September 2006, three months before these events.

counsel on February 28, 2007.  The new attorney, however, asked to be relieved.  The request was granted and a third attorney -- Thomas's present counsel -- was appointed on March 20, 2007.

On May 11, 2007, Thomas moved to dismiss the indictment, contending:  (1) the statute of limitations had run on any violation of § 1326, because he reentered the United States prior to the 1999 arrest, more than five years before he was indicted, and the Government had no proof that Thomas was present in the United States after December 1999, and (2) there were defects in the underlying deportation proceedings.

I heard argument on the motion on June 15, 2007.  I denied the second prong of the motion, ruling from the bench that Thomas was not entitled to a deportation hearing because he had waived the right to contest deportation (other than to apply for asylum) when he entered the country pursuant to the VWPP. (6/15/07 Tr. 6).  I reserved decision as to the first prong of the motion.

## DISCUSSION

The Government contends that Thomas was "found in" the United States no earlier than May 2006, when federal authorities first learned of his 1999 presence in New York.  The issue is whether a defendant can be "found in" the United States when he is no longer in the country.  I conclude, based on the plain language of the statute, its purpose, the case law, and common sense that he cannot.

A.    **The Language of the Statute**

Section 1326 of Title 8 of the United States Code provides that "any alien who . . . has been . . . deported . . . and thereafter . . . enters, attempts to enter, or is at any time found in, the United States," without consent of the Attorney General, commits a crime.  8 U.S.C. § 1326(a).  Violations of § 1326 are governed by the five-year statute of limitations generally applicable to non-capital offenses found in 18 U.S.C. § 3282.

Section 1326 was originally passed as part of the 1952 Immigration and Nationality Act (the "INA").  See Immigration and Nationality Act, ch. 8, § 276, 66 Stat. 226, 229 (1952) (codified at 8 U.S.C. § 1326).  While portions of the INA have subsequently been amended, the language of this provision has not changed since its original passage.  The term "found in" is not defined in 8 U.S.C. § 1101, the section setting out definitions for the chapter, and the legislative history is likewise silent as to its meaning.  See 8 U.S.C. § 1101; H.R. Rep. No. 82-1365 (1952), as reprinted in 1952 U.S.C.C.A.N. 1653, 1683, 1723-24.

The Government urges this Court to read the "found in" provision of § 1326 as being available in the past tense -- to mean that the crime of being "found in" may be completed when "the [G]overnment is both aware that [a defendant] was present in the country, and that his presence was in violation of the statute."  (6/15/07 Tr. 9) (emphasis added).  In essence, the Government is arguing that the "is at any time found in" language

- 7 -

of the statute is synonymous with "finding out about" an alien's illegal presence, past or present.

This reading contravenes the plain language of the statute.  An alien is "found in" the United States only if he is actually present; he also must be "found."  If the Government learns that an alien had previously been in the country but his whereabouts are presently unknown, that person is not "found." While the Government learned in May 2006 that Thomas had been present in the United States in 1999, it did not "find" Thomas at that point because Thomas's whereabouts were unknown -- the Government did not know whether he was in the United States.  In addition, the statute's use of the present tense "is" implies that the alien "is" -- not "was" -- physically located in the United States when the federal authorities learn of his presence.

Hence, the plain wording of the statute supports the conclusion that an alien must be present in the country to be "found in" the United States.

## B.   <u>The Purpose of the Statute</u>

As the Second Circuit has observed, § 1326 "is designed to punish an alien who, following his deportation . . . attempts to reenter or enter or, having reentered remains illegally in the country until he is found here." <u>United States v. Whittaker</u>, 999 F.2d 38, 41-42 (2d Cir. 1993).  In exploring the three provisions of § 1326, the Second Circuit also quoted a Fifth Circuit decision as follows:

> The clear language in 8 U.S.C. Section 1326(a)(2) provides three separate occasions upon which a deported alien may commit the offense:  1) when one illegally enters the United States; 2) attempts to illegally enter the United States; or 3) when a deported alien is found at any time in the United States.  The plain words of the statute set out discrete points in time when the crime may be committed.

Id. at 42 (quoting United States v. Gonzales, 988 F.2d 16, 18 (5th Cir. 1993)); accord United States v. DiSantillo, 615 F.2d 128, 135 (3d Cir. 1980) ("Congress intended a distinction between surreptitious crossing of the United States border and entry at a recognized INS port of entry.").

In United States v. Rivera-Ventura, the Second Circuit again read § 1326 as criminalizing "three discrete points in time."  There, the Court observed that "[s]ection 1326(a), by its terms, describes an offense that is complete when any of three events occurs:  when a previously deported alien (1) 'enters,' or (2) 'attempts to enter,' or (3) 'is at any time found in' the United States."  United States v. Rivera-Ventura, 72 F.3d 277, 281 (2d Cir. 1995).  The Court went on to state that

> the 'found in' clause was included [by Congress] to make it clear that if an alien illegally reenters the United States after deportation, he is subject to prosecution even if the government does not discover him or the illegality of his entry until after the time to prosecute him for illegal entry has expired.

Id. at 282.  Although the Government suggested at oral argument that "the crime of entering may continue," relying on United States v. Morgan, 380 F.3d 698, 702 n.3 (2d Cir. 2004), I follow

- 9 -

the Second Circuit's holding in Whittaker that Congress
purposefully included the "found in" provision to "cover aliens
who were found in the United States following their illegal
reentry" after the statute of limitations on the entry had
expired.  Whittaker, 999 F.2d at 42.

In arguing that the "found in" language covers a
situation where an alien had previously been present in the
United States but no longer is, the Government is conflating two
of the three scenarios.  An alien who is "found in" the United
States after having been deported obviously reentered the United
States.  He can be prosecuted for the entry, as long as he is
indicted within five years.  He can be prosecuted for being
"found in" the United States "at any time" -- even more than five
years after he reentered -- as long as he "is . . . found" here,
that is, as long as he is present, for it is his continued
presence that is illegal.  The "found in" scenario clearly was
not intended to cover the situation where an alien enters the
United States but then leaves before the Government discovers his
presence.

**C.    The Case Law**

The Court is not aware of any cases discussing the
"found in" provision § 1326 in a situation where the defendant
left the country before his presence was discovered, but several
cases decided by the Second Circuit are instructive.

In Whittaker, the Second Circuit concluded that § 1326
is "designed to punish an alien who, following his deportation

after commission of a felony and without the permission of the
Attorney General attempts to reenter or enters or, having
reentered, <u>remains illegally in the country until he is found
here</u>, i.e., his presence is discovered."  999 F.2d at 41
(emphasis added); <u>see</u> <u>United States v. Mancebo-Santiago</u>, 886 F.
Supp. 372, 374 (S.D.N.Y. 1995) (finding that the language of §
1326 "explicitly makes it a crime for an alien to remain in this
country after an illegal reentry"), <u>aff'd</u>, 112 F.3d 506 (2d Cir.
1996).  In finding that § 1326 is not unconstitutionally vague,
the Court observed that "the 'found in' provision informs an
alien" who illegally reenters "that he will be deemed guilty of
an offense when he is discovered."  <u>Whittaker</u>, 999 F.3d at 42.
The Court held that § 1326 alerted the defendant that "if he
remained in this country following his illegal reentry, he would
be subject to criminal prosecution when he was 'found' here."
<u>Id.</u> at 42-43.

    In <u>Rivera-Ventura</u>, before holding that an alien's
flight from the authorities tolled the statute of limitations for
illegal reentry under § 1326, the Second Circuit explored the
meaning of the "found in" provision of § 1326(a).  72 F.3d 277,
282 (2d Cir. 1995) (concluding in dicta that there is no
indication that Congress intended the "found in" prong of § 1326
to constitute a continuing offense).  <u>But see</u> <u>United States v.
Morgan</u>, 380 F.3d 698, 703-04 (2d Cir. 2004) (finding it
unnecessary to reach the Government's tolling argument because
the alien's second illegal reentry supported a new five-year

statute of limitations).  The Court observed that "[t]he
offense[s] of illegal entry or illegal attempt" -- the first two
events in § 1326 -- are "complete as soon as the entry or attempt
is made."  Id.; see United States v. Acevedo, 229 F.3d 350, 355
(2d Cir. 2000) (same); United States v. Gitten, No. 00 Civ. 9100
(DLC), 2001 WL 363052, at *3 (S.D.N.Y. Apr. 10, 2001) (same).

        The completeness of the offense of being "found in" the
United States, however, "depends not only on the conduct of the
alien but also on acts and knowledge of the federal authorities."
Rivera Ventura, 72 F.3d at 281.  The Court explained that "the
offense of being 'found in' the United States . . . is not
complete until the authorities both discover the illegal in the
United States, and know . . . the illegality of his presence."
Id. (citations omitted).  The Rivera-Ventura Court also observed
that "Congress's use of the word 'found' suggests a focus on the
time at which the authorities' location of the alien and their
knowledge of his presence converge, and that focus indicates that
the offense is complete at the time of that convergence," and
also that the "found in" offense is only completed when "the
alien is located."  Id. at 282 (emphasis added); see United
States v. Forrester, No. 02 Cr. 302 (WHP), 2002 WL 1610940, at *3
(S.D.N.Y. July 22, 2002); accord United States v. Lennon, 372
F.3d 535, 541 (3d Cir. 2004) (alien "found in" the United States
when he is apprehended by the INS); United States v. Parga-Rosas,
238 F.3d 1209, 1213 (9th Cir. 2001) (alien found if free from
official restraint at the time officials discover or apprehend

- 12 -

him); <u>United States v. Ruiz-Lopez</u>, 234 F.3d 445, 448 (9th Cir. 2000) (mere presence on U.S. soil not enough to be "found in"; alien must also be free from official restraint at that time); <u>United States v. Hernandez</u>, 189 F.3d 785, 791 (9th Cir. 1999) (offense of "found in" complete when alien is "discovered and identified"); <u>United States v. Santana-Castellano</u>, 74 F.3d 593, 597 (5th Cir. 1996) (the "found in" prong of § 1326 "prohibits deported aliens, who have illegally reentered the United States, from <u>remaining</u> in the country") (emphasis added); <u>United States v. Ortiz-Villegas</u>, 49 F.3d 1435, 1436 (9th Cir. 1995) (same); <u>United States v. Alaya</u>, 35 F.3d 423, 425 (9th Cir. 1994) ("To avoid being "found in" the United States, a deported alien can either not re-enter the United States or, if he has already re-entered the United States, he can leave.").

Although no court has explicitly held that an alien must be present in the United States to be "found" here, these holdings clearly suggest that the alien's physical presence in the United States at the time the authorities discover his illegal status is a required element of the "found in" violation of § 1326.  As the Court in <u>Whitaker</u> stated, an alien is "found in" the United States when he renters and "<u>remains</u> illegally in the country until he is found here."  999 F.2d at 41 (emphasis added).

**D.   <u>Common Sense</u>**

Finally, the Government's position simply is not logical.  It does not make sense that a person can be "found" by

the authorities when his presence is not known.  Indeed, the
Government's own arguments at the June 15th hearing betray the
illogic of its position.

     During the Court's colloquy with the Government about
its assertion that the statute of limitations did not start to
run until May 25, 2006, the date the authorities learned of
Thomas's 1999 presence, the Government stated that it is "not
even sure [the statute of limitations] began to run [that day]
because the cases suggest the [G]overnment has to have some idea
of where the alien is at the moment, and so it may have begun to
run after that." (6/15/07 Tr. 10).  Later, the Court asked the
following:  "[W]hen is it that the [G]overnment alleges Mr.
Thomas was 'found in' the United States?"  (Id. at 17).  The
Government replied:  "It could not have been earlier than May 25,
2006.  It may have been later than that."  (Id.).

     This argument makes the point.  If the statute of
limitations had not begun to run because Thomas was not "found"
-- the Government did not know his whereabouts -- then the crime
could not have been complete and Thomas could not have been
indicted in September 2006 for being "found in" the United
States.

     The Government also suggested that if an alien had been
illegally present in the United States forty years ago, never
having returned to this country, the Government could prosecute
him now for being "found in" this country if the Government
(acting with due diligence) did not learn until now of that

person's presence in the country forty years ago.  (6/15/07 Tr. 20-21).  The law cannot countenance such a result.

For the above reasons, I conclude that the "found in" provision of § 1326 requires both that the authorities know that an alien's presence in the United States is illegal, and that the alien is physically present in the United States at that time. The "found in" provision of § 1326 requires that the authorities both physically locate the alien and know that his presence in the United States is illegal, see Rivera-Ventura, 72 F.3d at 282. All that has occurred here is that in May 2006 the Government "found out about" Thomas's 1999 presence, and this is inadequate under the "found in" provision of § 1326.  Because the Government does not (and, as it acknowledges, could not) contend that Thomas's December 2006 arrest at LAX constitutes any violation of § 1326, I can only conclude -- on all the known facts -- that Thomas has not been "found in" the United States for purposes of § 1326.

**E.   Remedy**

As the statute of limitations has run on any 1999, or prior, illegal reentry, the Government either has indicted Thomas for a crime for which the statute of limitations has run, or it has indicted him for a crime that he has yet to commit.

A court may dismiss an indictment that is legally insufficient.  See United States v. Tanu, 589 F.2d 82, 86-87 (2d Cir. 1978).  An indictment is sufficient "if it, first, contains the elements of the offense charged and fairly informs a

- 15 -

defendant of the charge against which he must defend, and,
second, enables him to plead an acquittal or conviction in bar of
future prosecutions for the same offense." United States v.
Solomonyan, 451 F. Supp. 2d 626, 640 (S.D.N.Y. 2006) (quoting
Hamling v. United States, 418 U.S. 87, 117 (1974)).  As the
Second Circuit has explained, "an indictment need do little more
than to track the language of the statute charged and state the
time and place (in approximate terms) of the alleged crime."
United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992)
(citations omitted).

        When deciding a motion to dismiss pursuant to Federal
Rule of Criminal Procedure 12(b), a court must accept all factual
allegations in the indictment as true.  United States v. Clarke,
No. 05 Cr. 17 (DAB), 2006 WL 3615111, at *1 (S.D.N.Y. Dec. 7,
2006) (citations omitted).  A court should not look beyond the
face of the indictment and draw inferences as to proof to be
adduced at trial, for "the sufficiency of the evidence is not
appropriately addressed on a pretrial motion to dismiss an
indictment." United States v. Alfonso, 143 F.3d 772, 776-77 (2d
Cir. 1998).  Where, however, the Government "has made what can
fairly be described as a full proffer of the evidence it intends
to present at trial," a district court may evaluate "the
sufficiency of the evidence . . . on a pretrial motion to dismiss
an indictment."  Id. at 777 (citing circumstance where court
could dismiss for lack of jurisdiction); see United States v.
Gotti, 457 F. Supp. 2d 411, 421 (S.D.N.Y. 2006); accord United

States v. Flores, 404 F.3d 320, 325 (5th Cir. 2005) (finding "no error in the district court's procedure of resolving a legal question in a pre-trial motion to dismiss the indictment"); United States v. Risk, 843 F.2d 1059, 1061 (7th Cir. 1988) ("The district court found no violation and correctly dismissed the indictment, not because the government could not prove its case, but because there was no case to prove."). "In reviewing the sufficiency of the evidence, the court must view all of the evidence in the light most favorable to the Government and determine if there is any evidence 'upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'" Gotti, 457 F. Supp. 2d at 421 (quoting United States v. Mariani, 725 F.2d 862, 865 (2d Cir. 1984)).

Moreover, "a court . . . does not have the power to dismiss an indictment that is legally sufficient under the test of [Federal Rule of Criminal Procedure] 29, simply because it deems the dismissal to be in the interests of justice." Tanu, 589 F.2d at 86. Indeed, "[u]nder the separation of powers, the executive branch, rather than the judiciary, retains the power to dismiss [a] prosecution on other than strict grounds of insufficiency in law." Id. at 86-97.

Here, the indictment does track the language of the statute and does allege the elements of the crime charged. But the Government concedes that the statute of limitations has expired on the charge that Thomas illegally entered in or before October 1999, and it is unaware of any evidence that Thomas was

- 17 -

physically present in the United States from December 1999 through the date of the indictment. Hence, if the Court's interpretation of § 1326 is correct, then it would appear that there is no basis for the indictment and it is factually and legally insufficient.

At the same time, Thomas was taken into custody on December 23, 2006, two days before Christmas, as he was traveling from London to New Zealand to meet his common-law wife. He has now been detained for more than six months.

Under the circumstances, the indictment should be dismissed, as legally insufficient and in the interests of justice, or, at a minimum, Thomas should receive a speedy trial.

## CONCLUSION

For the reasons set forth above, I conclude that the Government's interpretation of § 1326 is incorrect as a matter of law. The Court will hold a conference on June 27, 2007, at 3:30 p.m. to discuss (1) whether the Government has any additional evidence to proffer in support of the charges, (2) whether the Court has the authority to dismiss the indictment at this juncture, (3) if so, whether the indictment should be dismissed as legally insufficient, and (4) if not, whether the case should be tried as early as July 10, 2007.

SO ORDERED.

Dated:    New York, New York
          June 26, 2007

                                        DENNY CHIN
                                        United States District Judge

- 18 -